UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BETTY RIDDLE,

    Plaintiff,

v().                                                  Case No: 8:22-cv-2803-KKM-CPT

JAY BUTTERFIELD and
LARRY L. EGER,

    Defendant.
_____

## ORDER

Betty Riddle sues Jay Butterfield for making unwelcome sexual advances toward her at work. She also sues her supervisor, Larry Eger, in his official capacity for allowing the harassment to occur and retaliating against her for complaining about it. Eger now moves to dismiss the claims against him. MTD (Doc. 27). Because Riddle sufficiently alleges discrimination and retaliation claims under Title VII and the Florida Civil Rights Act (FCRA), Eger's motion is denied.

I.  BACKGROUND[1]

Larry Eger is the Public Defender for the Twelfth Judicial Circuit of Florida. Compl. (Doc. 1) ¶ 4. He hired Betty Riddle, a Black woman, as a communication assistant in the Sarasota office in 2015. *Id.* ¶ 9–10. In 2019 or 2020, he hired Jay Butterfield to work in the IT department. *Id.* ¶ 11.

Beginning in 2020, Butterfield made vulgar and sexually suggestive comments to Riddle at work. *Id.* ¶ 15. In February 2021, he escalated to physically touching her in offensive ways, including "press[ing] his private parts up against Riddle's buttocks," pressing boxes against her buttocks, and trying to pull up her skirt. *Id.* ¶ 16. Riddle notified her immediate supervisor of Butterfield's behavior and asked Butterfield to stop, but the behavior continued through May 2021. *Id.* ¶¶ 17–20. On May 28, 2021, Riddle notified another supervisor, but was afraid to report it to human resources because she understood Butterfield was dating the head of HR. *Id.* ¶¶ 21, 22.

On June 1, Eger spoke with Riddle about her complaint, and Riddle him asked if Butterfield could work in another office while she filed a formal HR complaint. *Id.* ¶ 23. Her supervisor told her that Butterfield would work in a different office, but he still came to the Sarasota office at least once a week and came around Riddle's workspace. *Id.* ¶¶ 24–25. This made Riddle uncomfortable and she left work early on June 11 with

---

[1] The Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

permission from HR because she felt sick. *Id.* ¶¶ 25–26. On June 14, Eger told her that she could not leave work early again, that Butterfield would continue working from the Sarasota office when necessary, and that she needed to file a complaint with HR. *Id.* ¶ 27–29.

On June 15, Eger told Riddle that he spoke with the Attorney General and "was within his rights to allow Butterfield to continue to work in the [Sarasota] office." *Id.* ¶ 35. He also told her that she could not leave her desk while Butterfield was in the office except to go to the bathroom, and that he would not inform her when Butterfield would be there in advance so she could request time off. *Id.* ¶¶ 36–37.

Riddle filed a written complaint on June 22 and Eger informed her on July 9 that "the investigation was over and they found no evidence to support her [internal] complaint." *Id.* ¶¶ 38–39. Over a years later, after completing the EEOC process, Riddle filed this action on December 9, 2022, alleging five counts. Against Eger in his official capacity, she alleges four counts, one for harassment and one for retaliation in violation of Title VII and one count for harassment and one for retaliation in violation of the FCRA. *Id.* ¶¶ 45–69. She also alleges one count of battery against Butterfield. *Id.* ¶¶ 70–76. Butterfield answered the complaint against him, (Doc. 20), and Eger moves to dismiss the Title VII and FCRA counts. MTD.

3

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

III.  ANALYSIS

Eger moves to dismiss each claim against him for a host of reasons. None have merit. First, he argues that Riddle does not sufficiently allege a sex discrimination claim based on a pattern and practice of discrimination, disparate treatment, or a practice that disparately impacted her. MTD at 7–10. Second, he argues that Riddle fails to allege harassment that was severe or pervasive enough to establish her sexual harassment claims. *Id.* at 10–14. Third, Eger claims that Riddle fails to allege an "adverse employment action" to establish her retaliation claims. *Id.* at 14–15. Finally, he takes issue with being named in place of the Public Defender's Office and argues that Riddle's FCRA claims are duplicative of her Title VII claims. *Id.* at 15–16. I address each argument in turn.

### A. Riddle does not bring sex discrimination claims based on disparate impact or pattern and practice

Eger argues that Riddle's discrimination claims should be dismissed because she fails to allege facts supporting a disparate treatment, disparate impact, or pattern and practice discrimination claim. But Riddle does not bring a sex discrimination claim based on disparate impact or pattern and practice. Instead, she claims sex discrimination based on sexual harassment, a type of disparate treatment. The Supreme Court and the Eleventh Circuit "have long recognized" that Title VII prohibits "disparate treatment of men and women in employment," including through "requiring people to work in a discriminatorily hostile or abusive environment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir.

5

1999) (en banc) (quotation omitted). Because Riddle does not allege disparate impact or pattern and practice sex discrimination, she need not allege facts to support those theories. And, as further discussed below, her allegations suffice to make out a disparate treatment claim based on sexual harassment.

### B. Riddle sufficiently alleges her hostile work environment sex discrimination claims

Riddle alleges that she was sexually harassed in violation of Title VII and the FCRA. "Because the FCRA is based on Title VII, decisions construing Title VII apply to the analysis of FCRA claims." *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (per curiam). So, Count I and Count III are subject to the same analysis. *Id.* To establish these claims, Riddle must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza*, 195 F.3d at 1245. Here, Riddle's allegations clearly meet the first three elements. She alleges that she is a Black woman, that Butterfield made sexually suggestive comments to her, requested sexual favors, and physically touched her, and that he specifically referenced her race and gender in some of those comments. Compl. ¶¶ 10, 15–16.

6

Eger argues that the fourth and fifth elements are not met. Regarding the fourth element, Title VII "is not a federal civility code," and "sexual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Mendoza*, 195 F.3d at 1245 (internal quotation marks omitted). To establish that sexual harassment premised on a hostile work environment is sufficiently severe or pervasive to constitute sex discrimination, "an employee must make some showing in order to connect allegations of sexual harassment to a violation of Title VII." *Id.* This "includes a subjective and an objective component." *Id.* at 1246. "The environment must be one that 'a reasonable person would find hostile or abusive' and that 'the victim . . . subjectively perceive[s] . . . to be abusive.' " *Id.* (alterations in original) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Whether a situation is objectively severe and pervasive depends upon "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

Here, Riddle clearly alleges facts supporting her subjective perception that the harassment was severe and pervasive, including that she repeatedly objected to Butterfield's advances and left work early on one occasion because it made her feel sick. Compl. ¶¶ 17, 19, 26. But Eger argues that the alleged harassment is not objectively severe and pervasive

7

to survive the pleading stage. I disagree. Riddle alleges that the harassment began in 2020 and carried on through at least until May 2021. *Id.* ¶¶ 15, 20. She claims Butterfield told her, in what are objectively vulgar terms, that he "likes to have sex with black women," waited until she was alone in the office and made comments to her about how good he was in bed, and asked her to find him "a girl that would have sex with him" when she refused his advances. *Id.* ¶ 15. On one occasion, she alleges he asked her what color her underwear was and "what would happen if I crawl under your desk and look between your legs?" *Id.* ¶ 16. On another, she claims he said "you were in my dreams and I was f****** the s*** out of you." ¶ 20. Those are demeaning and graphic comments, under any reasonable assessment.

Riddle further alleges that the conduct progressed beyond inappropriate comments to physical touching, including Butterfield touching his private parts to Riddle's buttocks and attempting to pull up her skirt. *Id.* ¶ 16. While she alleges only a few specific instances of these comments and physical contact, she explains that these are just "example[s]." *Id.* ¶¶ 15, 16, 20. Viewing these allegations in the light most favorable to Riddle, her claims do not amount to "simple teasing, offhand comments [or] isolated incidents," and are sufficient to allege frequent conduct that is severe and physically threatening. *Mendoza*, 195 F.3d at 1246 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

8

(internal citations omitted)). Thus, she sufficiently alleges objectively severe and pervasive conduct.

Eger next argues that the allegations are insufficient to hold him liable as the employer. He claims that he took "immediate and appropriate corrective action," which negates his liability. MTD at 6 (quoting *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 736 (11th Cir. 2016)). He alleges these remedial measures included "separating the individuals and conducting an investigation." MTD at 7.

"Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held liable directly if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir 2002). "The remedial action must be reasonably likely to prevent the misconduct from recurring." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996) (quotation omitted).

Here, the allegations viewed in the light most favorable to Riddle establish the fifth element. Riddle alleges that she made at least three complaints to supervisors constituting actual notice, once sometime before May 28, 2021, once on May 28, and once when she made her written complaint to HR on June 22, 2021. Compl. ¶¶ 18, 21, 38. She also alleges that the harassment continued after the first complaint, and that no corrective action was taken at least until after she notified another supervisor on May 28, 2021. *Id.*

9

¶¶ 18–21. Finally, she alleges that, though her supervisor originally told her Butterfield would not work from the Sarasota office, he continued to work there at least one day a week and "would ensure that he went close to Riddle's workspace so that she could see him," and would "stare" and "smirk" at her. Compl. ¶ 25. Eger argues he "separate[ed]" them, MTD at 7, but Riddle's allegations suggest otherwise. Viewing these allegations in the light most favorable to Riddle, no such remedial measures "reasonably likely to prevent the misconduct from recurring" were taken. *Kilgore*, 93 F.3d at 754; *Wilcox v. Corrections Corp. of Am.*, 892 F.3d 1283, 1288 (11th Cir. 2018) (determining actions were effective when employer "ordered [the perpetrator] not to be around [the victim] after her first complaint" and he "never again touched [the victim]"). But even putting aside whether the actions Eger took in June 2021 constituted "prompt remedial action," Riddle, at a minimum, alleges facts that, when construed in the light most favorable to her, suggest no prompt action was taken in response to her first complaint to a supervisor sometime before May 28, 2021. *Kilgore*, 93 F.3d at 754. Thus, Riddle's allegations in Counts I and III are sufficient to state a claim.

### C. Riddle sufficiently alleges her retaliation claims

Riddle also alleges that she was retaliated against for opposing Butterfield's harassment and filing a complaint. Like her Title VII and FCRA sex discrimination claims, her retaliation claims under the same statutes are analyzed under the same legal standards.

10

*See Johnson*, 948 F.3d at 1325. "To make a *prima facia* case for a claim of retaliation under Title VII, a plaintiff must first show (1) that 'she engaged in statutorily protected activity,' (2) that 'she suffered an adverse action,' and (3) 'that the adverse action was causally related to the protected activity.' " *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc) (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)). Eger argues Riddle has not alleged an adverse employment action or causation.

First, Eger argues that Riddle fails to allege any "adverse employment action" because she does not allege an action that had a "detrimental effect on [her] pay or opportunities for advancement." MTD at 15. But the standard for adverse action for the purposes of a retaliation claim is not whether the action affected pay or promotion opportunities. Instead, the question is whether "a reasonable employee would have found the challenged action materially adverse," meaning the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted); *Donovan v. Broward Cnty Bd. of Comm'rs*, 974 So. 2d 458, 460 (Fla. 4th DCA 2008) (applying *Burlington* test to FCRA retaliation claim). Here, at a minimum, Riddle's allegation that she was required to stay at her workstation except to go to the bathroom, "impair[ing] her ability to do her job," satisfies this standard at the motion to dismiss stage. Compl. ¶¶ 36, 58.

11

Next, Eger argues that Riddle has not shown causation. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 352 (2013); *Palm Beach Cnty. School Bd. v. Wright*, 217 So.3d 163, 165 (Fla. 4th DCA 2017) (applying *Nassar* to FCRA claim). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. Here, Riddle alleges that Eger instructed her to remain at her desk except to go to the bathroom in the same conversation that he discussed her complaint and told her "he was within his rights to allow Butterfield to continue to work in the office." Compl. ¶ 35–37. This sufficiently alleges that Eger imposed the adverse condition in response to her complaint. Thus, Riddle has sufficiently alleged Counts II and IV.

### D. Eger is a proper defendant, and Riddle's FRCA and Title VII claims are not duplicative

Eger argues that Riddle's claims against him should be dismissed because "his agency is the proper defendant." MTD at 15–16. But Riddle sues Eger in his official capacity, and "[a] claim asserted against an individual in his or her official capacity, is in reality, a suit against the entity that employs the individual," so this *is* a suit against his agency. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009). Eger points to a district court case where supervisory employees named in their official capacities were dismissed. MTD at 15–16 (citing *Brooks v. CSX Transp. Inc.*, No. 3:09-cv-379, 2009 WL

12

3208708, at *4 (M.D. Fla. Sept. 29, 2009) (Corrigan, J.)). There, the district court noted that "[t]he proper method for a plaintiff to recover under Title VII . . . is by suing the employer either by naming the supervisory employees as agents of the employer or by naming the employer directly," and "[w]here the employer is named, . . . it then becomes unnecessary and redundant to name the supervisors or managers in their official capacities." *Brooks*, 2009 WL 3208708, *4. Here, Riddle did exactly as the district court in *Brooks* prescribed. She named Eger in his official capacity, and she did not name her employer, because to do so would have been redundant. Thus, the fact that Eger is named in his official capacity presents no ground for dismissal.

Eger also argues, without citation to authority, that Riddle's FCRA claims are duplicative of her Title VII claims. MTD at 16. This is wrong. While Title VII analysis applies to FCRA claims, *Johnson*, 948 F.3d at 1325, the two statutes provide two separate causes of action, one under state law and one under federal. Had Riddle alleged discrimination in violation of both the FCRA and Title VII in the same count, I would have stricken the complaint as a shotgun pleading. See *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing the third type of shotgun pleading as one that "commits the sin of not separating into a different count each cause of action or claim for relief"). Therefore, Riddle did not err by bringing these claims separately and Eger is not entitled to dismissal on this basis.

13

IV. **CONCLUSION**

Riddle sufficiently alleges her claims against Eger. Accordingly, the following is

**ORDERED:**

1. Eger's Motion to Dismiss (Doc. 27) is **DENIED**.

2. Eger must respond to Riddle's complaint by **August 8, 2023**.

**ORDERED** in Tampa, Florida, on July 18, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge